UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN S.,[1] | Case No. 19-cv-02155-TSH |
| Plaintiff, | |
| v. | **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| COMMISSIONER OF SOCIAL SECURITY, | Re: Dkt. Nos. 17, 19 |
| Defendant. | |

## I.  INTRODUCTION

Plaintiff Allen S. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Commissioner of Social Security, Commissioner of Social Security, denying Plaintiff's claim for disability benefits.  Pending before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 17 (Pl.'s Mot.), 19 (Def.'s Mot.).  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion for the following reasons.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II.    BACKGROUND

**A.    Age, Education and Work Experience**

Plaintiff is 64 years old.  AR 34.  He received a B.S. in industrial design in 1980 and three further years of education ending in 1988. AR 35, 197.  He described his past relevant work as a hardware and components engineer.  AR 51.

**B.    Medical Evidence**

**1.    Medical Background[2]**

Plaintiff suffers from lumbar degenerative disc disease, arthritis, and peripheral neuropathy.  AR 19; Pl.'s Mot. at 2.  His treatments have included steroid injections and medial branch blocks.  AR 309, 543, 869, 1097-99, 1842.  He exhibited normal gait, 5/5 strength, normal coordination, normal motor functioning, and normal muscle tone, with no edema.  AR 319, 370, 442, 555, 563, 568, 589, 591 ("gait smooth and symmetric"), 606, 740, 760, 763, 787, 795, 804, 872, 892, 895, 919, 927, 935, 1094, 1116.  Plaintiff was also diagnosed with anxiety and insomnia, depression screening, and took medication for these impairments.  AR 477, 479-80, 482, 489, 501, 1627.

On January 11, 2013, Plaintiff saw Pradipta Ghosh, M.D., at Kaiser Permanente.  AR 318-20.  He had bilateral wrist and right elbow pain, treated with injection.  AR 319-20.  On examination, he had no cyanosis, clubbing, or edema; his motor functioning was normal; his sensory functioning was normal; and his gait and stance were normal.  AR 319.

In a July 16, 2013 treatment note, Plaintiff reported a history of sciatic pain radiating as far as the back of his left knee.  AR 314.  On examination, he was well appearing and in no distress; his neck was supple; he had no joint tenderness, deformity, or swelling, and his peripheral pulses were normal with no pedal edema, clubbing, or cyanosis.  *Id.*

---

[2] The parties filed a joint statement of the nearly-3,000-page administrative record that summarizes the relevant medical background.  ECF No. 18.  However, the parties' statement often omits reference to dates of treatment or the treatment provider.  It also lists multiple treatments and/or subjective complaints within one paragraph with a cite to multiple pages at the end of that paragraph.  Although not a model of clarity, the Court accepts the parties' joint statement for purposes of this background section, but when specific facts serve to illustrate or clarify an issue, they will be discussed in more detail below.

1  On August 14, 2013, Plaintiff reported to treating physician Todd Tung Nguyen, D.O., that

2  physical therapy and Advil had been somewhat helpful and he took Meloxicam and Flexeril as

3  needed. AR 311. On examination, Dr. Nguyen found no tenderness, swelling, redness, or gross

4  abnormalities in Plaintiff's lumbar spine, lumbar flexion to 70 degrees, extension to 20 degrees,

5  internal and external hip rotation without associated groin pain, positive Straight leg raise testing

6  on the left versus negative Straight leg raising on the right, negative facet loading, negative faber,

7  5/5 motor strength, grossly intact sensation, negative Babinksi's, normal coordination, and normal

8  gait and station. AR 312. Dr. Nguyen referred him for an MRI, which showed generalized disc

9  disease with minimal-to-moderate multilevel bilateral neural foraminal narrowing, worst at the L3-

10  4 and L4-5 levels on the left, marginal osteophyte formation at all levels, no spondylolisthesis, and

11  normal marrow signal throughout. AR 310-12, 329.

12  On January 14, 2015, Plaintiff's treating provider found he was alert and oriented x3 and in

13  no acute distress; he had normal ranges of motion in his extremities with no lower extremity

14  edema; he had no motor or sensory deficits, and his gait was normal. AR 1205.

15  A February 2015 EMG at Stanford Hospital showed mild polyneuropathy. AR 583.

16  In 2016, Plaintiff had decreased lumbar extension and reduced lumbar-related knee and

17  ankle strength/flexion. AR 539, 555. He reported improved decreased pain after treatment. AR

18  540. Plaintiff also reported muscle spasms. AR 1297. He reported some improvement in

19  neuropathy and back pain with gabapentin, some benefit with pain through physical therapy, and

20  that his radicular symptoms had resolved, although he had some low-muscle spasms. *Id.* A

21  February 18, 2016 MRI showed moderate to severe left neural foraminal narrowing at L3-4 and

22  L4-5. AR 616-17.

23  On March 24, 2016, Plaintiff saw Jennifer Ray Bunch, M.D., for a consultation for pain.

24  AR 553-56. On examination, Dr. Bunch found static posture within normal limits; adequate

25  dynamic balance; non-antalgic gait bilaterally, he was able to heel and toe walk bilaterally;

26  reduced ranges of motion; and 5/5 extremity strength. AR 555.

27  On July 19, 2016, Plaintiff reported that his pain his left leg did not radiate. AR 1075. He

28  reported a history of lumbar radiculopathy, which "has resolved." *Id.*

3

On July 21, 2016, Plaintiff reported, "his low back pain is about the same and does not bother him as much as his right lateral ankle." AR 1073. In her assessment, Vicki Sae, P.T., D.P.T., stated that Plaintiff "seems to have benefit from lumbar injection due to decrease in radicular symptoms in left leg. Patient shows functional improvement in his ability to perform **ADLs** such as cleaning and has increased awareness of body mechanics . . . . Patient shows improvement with multifidi activation with plank activation with visual and tactile cueing and able to perform modified planks correctly after practice . . . . Patient is agreeable to beginning to taper down physical therapy to once a month after his next visit for 1-2 more visits." AR 1074.

An x-ray of Plaintiff's left ankle in September 2016 showed minute ossific densities and no acute abnormalities. AR 1585.

On September 15, 2016, Bindu Chandran, M.D., noted Plaintiff's hypertension was controlled on medication and he was taking medication for insomnia. AR 2942-43. On January 26, 2017, Dr. Chandran stated that Plaintiff did not want to take medication for hyperlipidemia, his cholesterol was minimally elevated, and he would continue with lifestyle changes instead; his hypertension was at goal on medication; and he was taking gabapentin and managing his diet. AR 2940.

On April 5, 2017, Plaintiff had negative Straight leg raise testing. AR 2184, 2576.

On May 7, 2017, Plaintiff reported having no muscle, joint pain, or stiffness. AR 1194, 1204. On examination, he was well appearing; had a normal mood and affect; was awake and alert; and had a normal gait. AR 1195.

On July 2, 2017, Plaintiff's treating provider found him to be alert, oriented x3, and in no acute distress; had normal range of motion in his extremities with no leg swelling; and he had no motor deficits, intact sensation, and a steady gait. AR 1175. He reported improvement in pain after medication. AR 1178.

### 2. Opinion Evidence

#### a. Maria Antoinette Acenas, M.D.

On June 15, 2016, Dr. Acenas performed a psychiatric consultative exam. AR 1056-58. Plaintiff reported that he had "No psychiatric treatment." AR 1056. He reported that he could

perform his personal grooming and hygiene and perform household chores of cooking, cleaning, and doing laundry. *Id.* On mental status exam, Plaintiff presented with good grooming and hygiene and was not in any physical distress; he was friendly and cooperative with spontaneous speech; his thought content was coherent and cohesive with no delusions; his mood was depressed with appropriate affect; he was oriented x3; he remembered 2/3 objects in three minutes; he was able to perform serial threes and knew who the president of the United States was; he could spell "world" forward but not backward; when asked to interpret the proverb "do not cry over spilled milk," he stated, "do not take it so difficult"; and when asked to differentiate between apples and oranges, he stated they were similar in that they both had skins and seeds, and the difference was in their taste. AR 1056-57. Dr. Acenas assessed Plaintiff was "not impaired" in all work-related mental functions. AR 1057.

### b. Erika Gilyot-Montgomery, Psy.D.

State agency psychiatric reviewing physician Dr. Gilyot-Montgomery found Plaintiff had no severe mental impairment. AR 72. She found the medical evidence showing grossly intact functioning with no more than mild limitations in working memory/sustained concentration, Plaintiff's activities of daily living, and Dr. Acenas's opinion supported her opinion. *Id.*

### c. Eugene Campbell, Ph.D.

State agency psychiatric reviewing physician Dr. Campbell found that the medical evidence and Plaintiff's activities of daily living supported a finding of no severe mental impairment. AR 87.

### d. Alexander Grinberg, M.D.

On December 30, 2017, Dr. Grinberg completed a Psychiatric Disability Evaluation. AR 2964-68. Plaintiff reported experiencing significant depression and anxiety that had become more severe in the past four years. AR 2964. He stated he had a history of treatment with medications in 1993-95 and 2001-02. *Id.* Plaintiff reported that in the latter period, pain aggravated anxiety and caused insomnia. *Id.* He reported having childhood difficulties in Iran and said that he experienced prejudice as an Iranian student in the United States at the time of that country's revolution and in seeking employment here immediately thereafter. AR 2965. He reported that

employment struggles intertwined with marital problems, including trying to hold onto

employment to provide coverage for chemotherapy for a second wife with ovarian cancer, who

subsequently died. AR 2965-66. Around the same time, Plaintiff's brother was diagnosed with

bipolar disorder, becoming dependent on him. AR 2966. After his wife's death, Plaintiff suffered

financially stressful interruptions in employment and, at the point he stopped working, the deaths

of his brother and of his mother, the latter of whom he couldn't place in a proper facility in Iran,

resulting in guilt. *Id.* "Since 2012 till now, patient was not able to work, his depression and

anxiety were getting worse." *Id.*

On mental-status examination, Dr. Grinberg found that Plaintiff made fair eye contact;

reduced, soft, and normal-flow speech; constricted affect; mild psychomotor lability; reported

guilt regarding his mother; had linear thought processes; was alert and oriented to place, time, and

person; made errors with multiplication and serial 7s, he could spell "world" forward but not

backward, and lapses similar to the remembering only two of three objects on short-term memory,

indicating some "mild" deficits in short-term memory; he was able to appropriately perform on

tasks for abstract thinking, generalization, and proverb interpretation; and his insight and judgment

were fair. *Id.*

Dr. Grinberg diagnosed major depressive disorder, recurrent, moderate, and "at least

moderate" anxiety. *Id.* Dr. Grinberg's Axis III diagnosis states that Plaintiff's "pain syndromes"

"definitely aggravates patient's depression and anxiety." AR 2967. Global assessment of

functioning ranged from 54 to 60. *Id.* Dr. Grinberg described Plaintiff's reports of self-isolating

from people, sometimes avoiding driving because of anxiety, and maintaining only minimal

activities of daily living because of lack of energy. *Id.* He posited work-related mental

limitations: for pace, persistence, and attendance; for "processing instructions of just moderate

complexity" and completing tasks; at least moderate interactional difficulties with coworkers and

the public; and "moderate-to-severe difficulties" adjusting to workplace changes and stressors. *Id.*

Dr. Grinberg also prepared a statement dated June 22, 2018, in which he stated: "I have

some familiarity with the Social Security disability process from my work with other patients, and

I knew [Plaintiff's] case had just been heard by an ALJ, so I figured his claim period went

backward something like two or three years." AR 12.  He continued: "The history I took, as reflected in my report, (see my Initial report), indicated both his physical and mental condition had worsened as of 2012-2013, when he stopped working; this included my 'psychosocial history,'" [Plaintiff's] own statement about longstanding depression worsening then, and his history of increased back pain reflected in his history of receiving steroid injections starting in 2013." *Id.*  Dr. Grinberg also noted: "My interview and records review did not reveal important further worsening physically or mentally thereafter, though [Plaintiff] adopted a more limited lifestyle throughout this period than what he must have had before when he was working (significant impairment in his social functioning evidenced by his self isolative behavior and, even, increased difficulties performing his ADLs due to loss of energy, motivation and feeling depressed)." *Id.*  He concluded: "The last few sentences of my report stated this worsening would unfortunately probably continue because of these factors and aging.  But my report addressed the last several years of [Plaintiff's] life.  The mental limitations I expressed would be approximately applicable for the last few years." AR 12-13.

### III.   SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

On May 4, 2016, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on August 30, 2013.  AR 161-62.  On August 2, 2016, the agency denied Plaintiff's claim, finding he did not qualify for disability benefits.  AR 99-102.  Plaintiff subsequently filed a request for reconsideration, which was denied on September 8, 2016.  AR 105-10.  On September 15, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 112-13.  ALJ Kevin Gill conducted a hearing on November 3, 2017.  AR 30-62.  Plaintiff testified in person at the hearing and was represented by counsel, Jesse Kaplan.  The ALJ also heard testimony from Vocational Expert June Hagen.

### A.   Plaintiff's Testimony

Plaintiff testified to mental symptoms and limitations: depression, anxiety, having to read or watch things three or four times until they clicked in his mind (AR 40), that the muscle relaxers he took increased his anxiety (AR 44), that anxiety and worrying interfered with his daily life and sleep (AR 45-46) and ability to focus, concentrate, and remember to the point that he forgot things

even with checklists (AR 46), and that this would interfere with his work (AR 48).

Plaintiff testified that he needed to stand to work and type because of burning back pain into his leg at his last job (AR 37), his manager had been unhappy about his frequent doctor visits including for epidural injections (AR.37-38), that reaching to a keyboard aggravated his back pain (AR 38), that he had stabbing foot pain because of neuropathy and perhaps also his back (*id.*), that he had arthritis and had received injections and took medication for finger arthritis that interfered with continuous keyboarding for more than 10 or 15 minutes (AR 38-39, 43-44), that he'd discussed surgery as an option to injections for his back pain (AR 39), and that even the raised desk at work didn't alleviate his back pain and there was no combination of sitting, standing, or walking that could comfortably get him through a workday (AR 41).

Plaintiff testified that he was currently getting epidural steroid injections for his back every three or four months (*id.*), that neuropathic foot pain like "zapping" woke him from sleep two or three times a night, three times a week (AR 42), that he was currently taking Lyrica for this foot pain and that it could prevent sleep (AR 42-43), and this neuropathic foot pain could last all day (AR 43).

### B.     Vocational Expert's Testimony

The vocational expert testified that Plaintiff's prior relevant work consisted of a combination of titles under the Dictionary of Occupational Titles:[3] computer engineer (DOT 033.167–010, SVP 7[4]), electronics inspector (DOT 726.381–010, SVP 6).  AR 53.  The ALJ then asked the expert a series of hypothetical questions.  For the first, the ALJ asked the expert to

---

[3] The Dictionary of Occupational Titles ("DOT") by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d) (1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

[4] Specific Vocational Preparation: "The Dictionary of Occupational Titles lists an SVP time for each described occupation.  Using the skill level definitions in 20 C.F.R §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  Social Security Ruling 00-4p.

assume a hypothetical individual of Plaintiff's age and education, "limited to lifting and carrying 20 pounds occasionally, ten pounds frequently, sit, stand, walk six hours in an eight-hour day. Can this hypothetical individual perform the past jobs you described?" AR 54. The vocational expert responded yes. *Id.*

In the second hypothetical, the ALJ asked the expert to consider the same person from hypothetical one, but "further limited to lifting and carrying ten pounds occasionally, less than ten pounds frequently, standing and walking just two hours in an eight-hour day." *Id.* "This individual is further limited to occasional climbing of ramps, stairs, occasional climbing of ladders, ropes or scaffolds, frequent balance and occasional stoop, kneel, crouch and crawl." *Id.* The vocational expert testified that the individual could only perform the computer systems engineer position. *Id.*

In the third hypothetical, the ALJ asked the expert to consider the same person from hypothetical two, but "this person is further limited to frequent fingering." *Id.* The vocational expert testified "the answer remains the same. So, yes, as per my past answers." AR 55.

In the final hypothetical, the ALJ asked the expert to consider the same person from hypothetical three, "but this person is further limited to detailed, non-complex tasks." *Id.* The vocational expert testified that this individual could not perform any of the past jobs she described. *Id.*

## C.     ALJ's Decision and Plaintiff's Appeal

On May 14, 2018, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. AR 14-29. This decision became final when the Appeals Council declined to review it on February 20, 2019. AR 1-5. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). On November 12, 2019, Plaintiff filed the present Motion for Summary Judgment. On November 24, 2019, Defendant filed a Cross-Motion for Summary Judgment.

## IV.     STANDARD OF REVIEW

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). An ALJ's decision to deny benefits must be set aside only when it is "based on

9

legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and quotation marks omitted). It requires "more than a mere scintilla" but "less than a preponderance" of the evidence. *Id.*; *Trevizo*, 871 F.3d at 674.

The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d at 675 (citation and quotation marks omitted). However, "[w]here evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* (citation and quotation marks omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (citation and quotation marks omitted).

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (citation and quotation marks omitted). A court may not reverse an ALJ's decision because of a harmless error. *Id.* at 1111 (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (citation and quotation marks omitted).

## V. DISCUSSION

### A. Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[5] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since his alleged onset date of August 30, 2013. AR 19.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease, arthritis, and peripheral neuropathy. AR 19.

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or

_____

[5] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

combination of impairments that meet or equals an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 21.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e).

In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)-(d), 416.945(b)-(d). With respect to a claimant's physical abilities, "[a] limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and other work." *Id.* §§ 404.1545(b), 416.945(b). With respect to a claimant's mental abilities, "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§ 404.1545(c), 416.945(c). Additionally, "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." *Id.* §§ 404.1545(d), 416.945(d).

Here, the ALJ determined Plaintiff has the RFC to

perform sedentary work as defined in 20 CFR 404.1567(a) (lift and

12

carry 10 pounds, sit for six hours, stand/walk for two hours in an eight-hour workday, and push/pull to the same weight limits) except he could lift 10 pounds occasionally and less than 10 pounds frequently. He occasionally could climb ramps, stairs, ladders, ropes, and scaffolds. He occasionally could stoop, knell, crouch, and crawl and frequently could balance. He bilaterally could perform fingering activity frequently.

AR 21.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined Plaintiff could perform past relevant work as a computer system engineer. AR 23.

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines. at 20 C.F.R. pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).[6] Here, as he determined Plaintiff could perform his past relevant work, the ALJ determined Plaintiff was not under a disability and therefore did not proceed to the fifth step.

**B.      Plaintiff's Arguments**

Plaintiff argues the ALJ erred in: (1) giving no weight to Dr. Grinberg's opinion; (2) rejecting Plaintiff's testimony; and (3) failing to accept or reject Plaintiff's wife's testimony.

**C.      Dr. Grinberg's Opinion**

Dr. Grinberg examined Plaintiff and completed a Psychiatric Disability Evaluation on December 30, 2017, diagnosing Plaintiff with major depressive disorder, recurrent, moderate, and

---

[6] The Medical-Vocational Guidelines are commonly known as "the grids". *Lounsburry*, 468 F.3d at 1114.

"at least moderate" anxiety, and finding he would have significant difficulties with all aspects of social life, activities of daily living, and work and work-related activities. AR 2964-68. The ALJ noted Dr. Grinberg's "evaluation was conducted in December 2017 and is remote from the date last insured, June 30, 2016. Dr. Grinberg did not assert that this evaluation could relate to that earlier date." AR 20. Because of this, the ALJ gave "no evidentiary weight" to Dr. Grinberg's opinion. *Id.* The ALJ instead gave "substantial weight to Dr. Acenas's opinion. *Id.* As part of his administrative appeal with the Agency, Plaintiff also submitted a June 22, 2018 statement from Dr. Grinberg, indicating both Plaintiff's physical and mental condition had worsened as of 2012-2013 and "[t]he mental limitations I expressed would be approximately applicable for the last few years." AR 12-13.

Plaintiff argues the ALJ committed error in rejecting Dr. Grinberg's opinion because he did so solely because of its timing. Pl.'s Mot. at 6. He contends that, had the ALJ considered the opinion, it would have established a mental impairment at step two and a different RFC. *Id.* at 6-7.

### 1. Legal Standard[7]

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *King v. Berryhill*, 2018 WL 4586726, at *11 (N.D. Cal. Sept. 25, 2018). In deciding how much weight to give to any medical opinion, the ALJ considers the extent to which the medical source presents relevant evidence to support the opinion. 20 C.F.R. § 416.927(c)(3). Generally, more weight will be given to an opinion that is supported by medical signs and laboratory findings, and the degree to which the opinion provides supporting explanations and is consistent with the record as a whole. 20 C.F.R. § 416.927(c)(3)-(4).

In conjunction with the relevant regulations, the Ninth Circuit "developed standards that

---

[7] Rules regarding the evaluation of medical opinion evidence were recently updated, but the updates were made effective only for claims filed on or after March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017). As Plaintiff's claim was filed before 2017, the Court evaluates the medical opinion evidence in his case under the older framework as set forth in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) and in Social Security Ruling 96-2p.

guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(c)(2)).

If a claimant has a treatment relationship with a provider, and clinical evidence supports that provider's opinion and is consistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [SSA] considers specified factors in determining the weight it will be given." *Orn*, 495 F.3d at 631. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)(i)-(ii)).

> Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the [Social Security] Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record.

*Id.* (citing 20 C.F.R. § 404.1527(c)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See Orn*, 495 F.3d at 632

(citing SSR 96–2p,[8] 1996 WL 374188 (July 2, 1996)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p at 4.

Where an examining doctor's opinion is contradicted by another opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### 2. Analysis

The ALJ was tasked with resolving contrasting medical opinions from four physicians concerning Plaintiff's mental functioning. At one end of the spectrum, Dr. Acenas examined Plaintiff on June 15, 2016 and conducted a comprehensive psychiatric evaluation finding no mental impairments. AR 1056-58. Among other mental-status findings supporting her opinion, she found Plaintiff presented as friendly and cooperative, with good grooming and hygiene; displayed coherent thought processes and normal thought content; exhibited no suicidal or homicidal ideation; was oriented times three; had intact memory, fund of knowledge, judgment, and insight; and he was able to perform serial threes. *Id.* Two separate physicians agreed with Dr. Acenas's assessment. On or about July 7, 2016, State consulting physician Dr. Gilyot-Montgomery evaluated Plaintiff's medical records and concluded that Plaintiff's treatment history, mental-status examinations, and Dr. Acenas's opinion all supported a finding that Plaintiff's mental impairments were not severe. AR 72. On or about September 7, 2016, State consulting physician Dr. Campbell evaluated Plaintiff's medical records and concluded that the evidence showed Plaintiff did not have a severe mental impairment. AR 87.

The ALJ found that Plaintiff's treatment history was consistent with Dr. Acenas's, Dr. Gilyot-Montgomery's, and Dr. Campbell's opinions, explaining that the record did not evidence treatment other than medication during the relevant time period (from August 30, 2013, Plaintiff's

---

[8] "[Social Security Rulings] do not carry the force of law, but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see* 20 C.F.R. § 402.35(b)(1). The Ninth Circuit defers to the rulings unless they are "plainly erroneous or inconsistent with the Act or regulations." *Chavez v. Dep't. of Health and Human Serv.*, 103 F.3d 849, 851 (9th Cir. 1996).

alleged onset date, through June 30, 2016, Plaintiff's date last insured. AR 20. The ALJ also

noted there was no evidence of any treatment from a mental-health professional or any records of

any counseling or therapy that would corroborate the existence of a severe mental impairment. *Id.*

Lack of treatment is a valid reason for the ALJ to find no impairment. *See Malloy v. Colvin*, 664

Fed. App'x. 638, 641 (9th Cir. 2016) (affirming finding of no severe mental impairment where

claimant received only "'minimal and inconsistent treatment' for any psychological symptoms

[he] may have experienced") (citing *Molina*, 674 F.3d at 1111; *Lemke v. Comm'r Soc. Sec.*, 380

Fed. App'x. 599, 600-01 (9th Cir. 2010) (affirming step-two finding of no severe mental

impairment based on claimant's "failure to seek psychiatric treatment"); *Lasich v. Astrue*, 252 Fed.

App'x. 823, 825 (9th Cir. 2007) (affirming step-two finding that anxiety and depression were not

severe where claimant "had not been regularly treated by a licensed psychologist or psychiatrist or

received regular mental health counseling or therapy"). Given the inconsistency of Dr. Grinberg's

opinion with the record as a whole, the Court finds it is a legitimate reason to reject the opinion.

*See* 20 C.F.R. § 404.1527(c)(4) (inconsistency with the record is a specific and appropriate reason

for discounting a medical opinion); 20 C.F.R. § 416.927(c) (when evaluating opinions, ALJ

appropriately considers supportability, consistency with evidence in the record, and factors that

tend to support or undermine the opinion, among other things). The ALJ evaluated all the medical

evidence and it is "solely the province of the ALJ to resolve" such conflicts in medical opinion

evidence. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). It is not this Court's role to

second-guess the ALJ's resolution of conflicting medical testimony. *Andrews v. Shalala*, 53 F.3d

1035, 1041 (9th Cir. 1995).

The ALJ also found Dr. Grinberg's opinion had little evidentiary value because he

rendered it on December 30, 2017, after Plaintiff's eligibility for disability insurance benefits

ceased on June 30, 2016. AR 20. While Plaintiff contends this was not a valid basis to discount

Dr. Grinberg's opinion, the Ninth Circuit has found otherwise. *See Lombardo v. Schweiker*, 749

F.2d 565, 566 (9th Cir. 1984) (holding ALJ "reasonably evaluated the remoteness of

[psychiatrist's] examination" that took place one and a half years after the expiration of the

insured period when discounting the psychiatrist's opinion, because claimant "had to show that he

was disabled within the meaning of the Social Security Act before his coverage expired"); *Lair-Del Rio v. Astrue*, 380 Fed. App'x. 694, 695-96 (9th Cir. 2010) (holding retrospective opinions from three physicians regarding claimant's mental condition "written months and years after the relevant time period, are unpersuasive"); *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) ("The opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status, however, is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam"); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (affirming rejection of physician's opinion rendered more than a year and a half after claimant's date last insured); *Watkins v. Astrue*, 357 Fed. App'x. 784, 786 (9th Cir. 2009) (affirming rejection of treating physician's opinion offered after claimant's insured status expired and the "questionnaire [was] written in the present tense" and "made no indication" it was retroactive); *DeBerry v. Comm'r of Soc. Sec.*, 352 Fed. App'x. 173, 176-77 (9th Cir. 2009) (affirming rejection of treating physician's opinion where physician had no personal knowledge of claimant's condition during the relevant time period).

Plaintiff argues that "[g]iving Dr. Grinberg no weight whatever was wrong on the law, but beyond this a 6/22/18 statement of Dr. Grinberg makes clear the decision was wrong in fact." Pl.'s Mot. at 7. He notes that, in his 2018 statement, Dr. Grinberg "indicated familiarity from his work with the Social Security process and that he therefore assumed [Plaintiff's] claim period encompassed two or three years before the examination." *Id.* (citing AR 12). He also notes that Dr. Grinberg "pointed to how his earlier report's psychosocial and medical histories reflected [Plaintiff's] mental condition worsening with the deaths of his brother and mother in 2012 and with worsening of his pain condition in 2013, as reflected in lumbar steroid injections." *Id.* (citing AR 12). However, none of Dr. Grinberg's statements change the fact that he had no personal knowledge of Plaintiff's condition until well after he ceased being eligible for benefits on June 30, 2016. *See DeBerry*, 352 F. App'x at 176-77 (affirming rejection of physician's retrospective opinion where physician had no personal knowledge of claimant's condition during the relevant period). Further, based on Plaintiff's own reports, Dr. Grinberg stated that his mental condition got worse over the years, which would mean that Plaintiff's condition in December of 2017, when

Dr. Grinberg first met him, would not be indicative of his condition from August 30, 2013, Plaintiff's alleged onset date, through June 30, 2016, the date Plaintiff ceased being eligible for benefits. *Tidwell*, 161 F.3d at 602 ("The fact that Dr. Winkler did not examine Appellant until November 12, 1993, more than a year after the expiration of her insured status, coupled with other contradictory medical evidence, fully supports the ALJ's determination that Dr. Winkler's submissions were not convincing."); *Macri*, 93 F.3d at 545 (reports issued after the ALJ's decision are less persuasive); *Lair-Del Rio*, 380 Fed. App'x at 696 ("The ALJ also concluded that Lair-Del Rio's medical records pertaining to treatment obtained subsequent to the date last insured did not satisfy her burden to prove an onset date that preceded the date last insured. This was a reasonable conclusion and because a reasonable mind could conclude on the basis of the record that Lair-Del Rio was not disabled as of the date last insured, we hold substantial evidence supports the ALJ's findings.").

Accordingly, because the ALJ provided specific and legitimate reasons for his rejection of Dr. Grinberg's opinion, and substantial evidence supports the ALJ's findings, the decision must be affirmed.

**D.      Credibility**

The ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" AR 22. Plaintiff argues the ALJ erred in this finding because he "does not specifically explain what symptom allegations were credited, or how much, or why, or why not, as the law requires." Pl.'s Mot. at 12.

**1.      Legal Standard**

Congress expressly prohibits granting disability benefits based solely on a claimant's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms, including pain, but statements about pain or other symptoms "will not alone establish" the claimant's disability). "An ALJ

19

cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ is, however, required to make specific credibility findings. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) (the credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

A two-step analysis is used when determining whether a claimant's testimony regarding their subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, it must be determined "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc); 42 U.S.C. § 423(d)(5)(A)). A claimant does not need to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant has met the first step and "there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. Courts must not engage in second-guessing, where the ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record." *Fair*, 885 F.2d at 604. However, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing *Lester*, 81 F.3d at 834; *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (per curiam) ("'Excess pain' is, by definition, pain that is unsupported by objective medical findings.").

Factors an ALJ may consider in weighing a claimant's credibility include: "[claimant's]

reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (quoting *Light*, 119 F.3d at 792). An ALJ's credibility finding must be properly supported by the record, and sufficiently specific to ensure a reviewing court he did not "arbitrarily discredit" a claimant's subjective testimony. *Id.* at 958 (citing *Bunnell*, 947 F.2d at 345-46).

### 2.    Analysis

Here, contrary to Plaintiff's assertions, the ALJ articulated sound reasons for finding that his subjective allegations were not wholly reliable. As the ALJ noted, Plaintiff alleged disability due to lumbar radiculopathy, disc bulges, arthritis, neuropathy, hyperlipidemia, hypertension, depression, and anxiety. AR 22, 196. He alleged both physical and mental deficits including difficulties standing, walking, sitting, concentrating, and remembering. AR 22, 37-46. However, after considering the evidentiary record, the ALJ found that the weight of the medical evidence, Plaintiff's treatment history, and the medical-opinion evidence did not corroborate functional limitations beyond his restrictive RFC.

First, the ALJ considered the extent to which Plaintiff's statements were consistent with the objective clinical findings, evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms" and their impact on your ability to work). The ALJ discerned that many of Plaintiff's subjective complaints were unsupported by the medical evidence, which did not support functional limitations beyond Plaintiff's RFC for a reduced range of sedentary work. AR 21-23. For example, objective diagnostic testing showed degenerative disc disease with some bulges and a positive Straight leg raise test on the right and some diminished range of motion, AR 311-12, 539, 555, but the clinical findings also showed that Plaintiff had full (5/5) strength, normal coordination, normal motor functioning, normal muscle tone, normal gait, including toe and heel walking, normal posture, normal balance, negative Straight leg raise testing

on the left, and no joint tenderness, deformity, or swelling, edema, clubbing, or cyanosis. AR 311-12, 319-20, 370, 442, 555, 563, 568, 589, 591, 606, 740, 760, 763, 787, 795, 804, 872, 892, 895, 919, 927, 935, 1094, 1116, 1175, 1178, 1194-95, 1205. Both State agency physicians who evaluated Plaintiff's capabilities in physical functioning found he was capable of a medium exertional capacity. AR 74-75, 88-90. Despite this, the ALJ interpreted the record favorably to Plaintiff and limited him to a restricted range of sedentary work. AR 21.

Second, the ALJ noted that Plaintiff's course of treatment was inconsistent with his allegations of disabling impairments. AR 22; *see* 20 C.F. R. § 404.1529(c)(3)(iv)-(vi) (medication, course of treatment other than medication, and other measures a claimant employs to alleviate alleged symptoms are properly considered in the consistency analysis). For example, while Plaintiff alleged disability due to hypertension and hyperlipidemia, his medical records showed these conditions were controlled with lifestyle changes and medication. AR 2940; *see Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits") (citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication); *Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) (pain complaints properly rejected where the ALJ "reasonably noted" evidence that pain had come under control). The ALJ noted that Plaintiff described difficulties standing and walking, with back and foot pain, along with difficulty sleeping, concentrating, and remembering, but he also stated he could sit for longer periods with injections for back pain. AR 22. While noting that "medical evidence indicates pathology in the spine that could lead to chronic pain," the ALJ noted "the evidence also indicates reasonable control of that pain with medications, physical therapy, home exercise, and injections." AR 23. The Court finds the ALJ properly weighed the efficacy of Plaintiff's treatment.

Third, the ALJ also considered Plaintiff's activities, including household chores, driving, taking walks, shopping, using the computer, and paying bills. AR 22. While Plaintiff's activities may have been limited by his impairments, the ALJ found they did not appear to be as limited as he alleged them to be. *Id.*; *see Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (finding

that a claimant's self-reported activities suggested a higher level of functionality than claimant alleged); *Molina*, 674 F.3d at 1112-13 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). And, even if Plaintiff's activities were not particularly extensive, the ALJ's conclusion that he was not as limited as he claimed was a reasonable and valid basis for discounting his self-reported symptoms. *Molina*, 674 F.3d at 1112-13 ("Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *Valentine*, 574 F.3d at 694 (the ALJ properly determined that the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities . . . are inconsistent with the degree of impairment he alleges").

Because the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's testimony, and the decision is supported by substantial evidence, the Court finds the ALJ's decision must be affirmed.

### E. Meriem S.'s Testimony

On May 9, 2016, Meriem S., Plaintiff's wife, completed a third-party function report form in which she testified to her husband's sleep being interrupted by bad dreams, foot pain, and sometimes back pain; needing reminders to take medicine; not preparing meals because of amotivation, back pain, and feeling "down"; needing encouragement to get chores done; being able to walk only 10-15 minutes before needing a rest and being able to pay attention only 15 or 20 minutes; and being too nervous, impatient, or lacking in energy to get along with people, having fears simply of "daily items, task (sic), future things," and that formerly he was more active, positive, energetic, could concentrate better, and get more done. AR 235-42. The ALJ found Meriem "honestly expressed her concerns for the claimant," but "the Social Security program requires that there must be medical evidence to corroborate the severity of impairments – non medical evidence is not sufficient." AR 22. As such, the ALJ assigned her statements "little weight." *Id.* Plaintiff argues the ALJ committed error because Meriem's report "corresponds well with Dr. Grinberg's report and opinions." Pl.'s Mot. at 9.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations and quotation marks omitted). The ALJ must provide specific reasons, "germane to each witness," to reject the testimony of a lay witness. *Id.* (citations and quotations omitted). If an ALJ fails to do so, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Here, the Court finds the ALJ provided a germane reason for rejecting Meriem's opinion: it was inconsistent with the medical evidence of record. Such inconsistency is a germane reason for rejecting the opinion of a non-medical source. *Bayliss*, 427 F.3d at 1218 (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *McMath v. Comm'r of Soc. Sec.*, 2017 WL 5889838, at *10 (N.D. Cal. Nov. 29, 2017) (affirming decision disregarding lay witness testimony where it was inconsistent with medical evidence). As to Plaintiff's argument regarding Dr. Grinberg, the Court already determined the ALJ properly discounted his opinion and this argument is therefore without merit. Moreover, Meriem's testimony is largely duplicative of Plaintiff's own claims of mental and physical limitations. Thus, any error in the ALJ's analysis of Meriem's testimony would be harmless. *See Valentine*, 574 F.3d at 694 (because ALJ gave valid reasons for rejecting a claimant's complaints regarding fatigue and "because the wife's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony"); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless"). Accordingly, the ALJ's reliance on the medical evidence and treatment history when evaluating Plaintiff's claims apply with equal force to Meriem's allegations. *See, e.g., Bayliss*, 427 F.3d at 1218 (identifying inconsistency with the medical evidence as a germane reason to discount lay-witness statements); *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (same).

Accordingly, the Court finds the ALJ did not commit error in giving Meriem S.'s testimony little weight.

## VI.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: December 27, 2019

THOMAS S. HIXSON
United States Magistrate Judge